REFORM and AFFIRM; Opinion issued November 14, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01266-CR

## LASHUNDRA ADAMS, Appellant

### V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F08-53315-V

# MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald and Lang-Miers
Opinion By Justice O'Neill

Appellant Lashundra Adams appeals her jury conviction for aggravated assault with a deadly weapon. In three issues, appellant contends the evidence is legally insufficient to support her conviction and the judgment should be reformed to reflect the proper trial attorneys. For the following reasons, we reform the judgment and affirm the trial court's judgment as reformed.

Appellant was charged with stabbing the victim Meishea Pruitt with a screwdriver or "an unknown sharp object." The evidence at trial showed that appellant and Pruitt were romantically involved with the same man, Romall Scott. Before the offense, the two women had numerous arguments over the phone about Scott. Shortly before the offense, Scott married Pruitt, who was also the mother of his child. Scott however continued his relationship with appellant.

Pruitt initially testified that on the day of the offense, she called Scott on his cell phone. She said Scott was with appellant and appellant took Scott's phone and started arguing with Pruitt. She said when Scott got his phone back, he told Pruitt to meet him at his mother's house. Pruitt testified that when she got to Scott's mother's house, she got out of her car and started to get her daughter out of the back seat. As she leaned down, appellant stabbed her in the back two or three times, and then walked away. Pruitt testified the object she was stabbed with looked like a pocket knife. After she was stabbed, an ambulance arrived and she went to the hospital. On cross-examination, Pruitt testified that after reviewing the police report, she was mistaken about the events leading to her going to Scott's mother's house. She said she and Scott had been at a gas station that day, got into an argument, and she drove off leaving him at the gas station. She then went to appellant's mother's house.

Scott testified that on the day of the offense, he and Pruitt were at a gas station. Pruitt was on his cell phone arguing with appellant. Pruitt started yelling at Scott, while continuing to argue with appellant. Scott got out of the car and started walking toward his mother's nearby house. Pruitt drove off in the same direction. As Scott walked toward his mother's house, he saw appellant coming from the direction of the house. She told Scott, "yeah, I got yo' bitch." He said she had a "shiny" object in her hand that looked like a flat-head screwdriver, or some kind of "ice pick or something like that." When he got to the house, he saw Pruitt hunched over, going toward his mother's door, yelling "she stabbed me, she stabbed me." Scott called police.

Officers Paul James and Ben Avala responded to the call. When they arrived at the scene, Pruitt was in the ambulance being treated for puncture wounds. She and Scott were screaming at each other. According to the officers, both Pruitt and Scott reported the stabbing had occurred at the doorway of the house. After talking to Pruitt and Scott, they went to appellant's house to question

—2—

her. Appellant claimed she knew nothing about the stabbing and allowed the officers to look for a screwdriver.

Appellant testified that Scott would often come over and spend the night at her house. She knew Pruitt was the mother of Scott's child, but she said it did not seem as though they were a "couple." She said before the incident, she and Pruitt had argued on the phone and Pruitt had threatened to shoot her. She said on the day of the offense, Pruitt called her and told her to stay away from Scott and to stop calling him. Appellant responded she would only stop seeing and calling Scott if Scott told her to, and she was planning to call him right then. When she got off the phone, appellant called Scott, but he did not answer. She then walked to Scott's mother's house who lived nearby. She took a kitchen knife with her because it was a very violent neighborhood.[1] When she got to Scott's mother's house, Pruitt was there and started yelling and cussing at appellant telling her to stay away from Scott. Appellant again told Pruitt she would only stay away from Scott if Scott told her to. Pruitt then went to her trunk "aggressively." When Pruitt began to open the trunk, appellant thought Pruitt was going for a gun. She feared for her safety and swung at Pruitt with her knife.

Appellant admitted that when she was questioned by police later that day, she denied stabbing Pruitt. She also testified that despite the State's photograph of Pruitt's injuries showing three stab wounds, she only swung at Pruitt one time.

After hearing the evidence, the jury found appellant guilty of aggravated assault with a deadly weapon. In her first point of error, appellant contends the evidence is legally insufficient to disprove her claim of self-defense. When reviewing legal sufficiency of the evidence to support a verdict, we

---

[1] The police officers acknowledged that, in that area, it would be prudent to carry a weapon for protection.

view all of the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App.2000). When a defendant challenges the legal sufficiency of evidence to support rejection of a defense such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Self-defense is an issue of fact for the jury to determine. *Saxton*, 804 S.W.2d at 913. In a sufficiency review, we do not re-evaluate the weight and credibility of the evidence, and we defer to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We presume that the jury resolved all inconsistencies in the evidence in favor of the verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Pruitt testified that appellant stabbed her as she was getting her child out of the back seat of her car. The evidence also showed that Pruitt suffered three stab wounds to her back. Appellant nevertheless asserts the evidence is insufficient to show she did not stab Pruitt in self-defense. She relies on her own testimony and discrepancies in Pruitt's testimony, and concludes the jury could not have rationally believed Pruitt. However, it is the jury's responsibility to resolve discrepancies in the testimony and may believe all, some or none of any witness's testimony. We conclude the evidence is legally sufficient to disprove appellant's claim of self-defense. We resolve the first issue

—4—

against appellant.

In her second issue, appellant contends the evidence is legally insufficient to prove the deadly weapon finding as alleged in the indictment. The indictment in this case, as amended by the trial court, alleged appellant used a "screw driver and an unknown sharp object."[2] According to appellant, the evidence is insufficient to prove this allegation because the only credible evidence in the record shows the weapon she used was a knife. However, Scott testified he thought the weapon appellant had was a screwdriver, or an ice pick, or "something like that." Pruitt testified appellant stabbed her with what "looked like" a pocket knife. Although appellant testified she used a kitchen knife, the weapon she used was never recovered. We conclude the evidence is legally sufficient to show appellant used an unknown sharp object. We resolve the second issue against appellant.

In her third issue, appellant contends the judgment should be reformed to reflect the correct names of the trial attorneys. The judgment reflects the "Attorney for State" was Glen Fitzmartin and the "Attorney for Defendant" was Paul Johnson. However, the record reflects Doug Millican was the State's attorney and Mark Watson was appellant's attorney. The State concedes error. Consequently, we reform the judgment to show the correct names of the trial attorneys. We affirm the trial court's judgment, as reformed.

MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111266F.U05

---

[2] Appellant does not challenge the validity of the amendment.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LASHUNDRA ADAMS, Appellant

No. 05-11-01266-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 292nd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F08-53315-V).
Opinion delivered by Justice O'Neill, Justices FitzGerald and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REFORMED** to show the "Attorney for State" at trial was Doug Millican and the "Attorney for Defendant" at trial was Mark Watson. As reformed, the judgment is **AFFIRMED**.

Judgment entered November 14, 2012.

MICHAEL J. O'NEILL
JUSTICE